**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **RAYMUNDO LOPEZ,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **EP-13-CV-35** |
| | § | **EP-10-CR-1937-KC-1** |
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Respondent**. | § | |

**ORDER**

On this day, the Court considered Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate,

Set Aside, or Correct Sentence by a Person in Federal Custody (the "Motion"), ECF No. 140.[1]

By the Motion, Petitioner challenges his sentence on the ground that he received ineffective

assistance of counsel. For the following reasons, the Court **DENIES** the Motion.

**I.     BACKGROUND**

On July 14, 2010, a grand jury charged Petitioner, along with other co-defendants, in a

two-count indictment alleging (1) conspiracy to import 1,000 kilograms or more of a mixture or

substance containing a detectable amount of marijuana in violation of 21 U.S.C. §§ 960(a)(1),

960(b)(1)(G), and 963; and (2) conspiracy to possess 1,000 kilograms or more of a mixture or

substance containing a detectable amount of marijuana with intent to distribute in violation of 21

U.S.C. §§ 841(a)(1), 841(b)(1)(A)(vii), and 846. Indictment, ECF No. 19. Petitioner retained an

attorney ("Trial Counsel") to represent him in the Case. *See* ECF No. 30. Petitioner entered an

initial plea of not guilty on August 4, 2010. ECF No. 38.

On March 2, 2011, Petitioner pleaded guilty by agreement to an information (the

---

[1] For the purposes of this Order, all docket entries refer to the criminal case 10-CR-1937 (the "Case").

1

"Information"), ECF No. 92. *See* Plea Agreement, ECF No. 94. Unlike the Indictment, the Information charged only a single count of conspiracy to possess a controlled substance with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846, and charged a reduced quantity of 100 kilograms or more of marijuana instead of 1,000 kilograms. Information 1; Plea Agreement 1; Plea Hr'g Tr., Mar. 2, 2011, ECF No. 130. Although Petitioner agreed to plead guilty only to conspiracy to possess 100 kilograms of marijuana, Plea Agreement 1, the factual basis attached to the Plea Agreement (the "Factual Basis") stipulates that Petitioner conspired to possess with the intent to distribute a total of 1413.11 kilograms of marijuana. *Id*. at 10. The Plea Agreement contains the following provision: "By signing the Plea Agreement, the Defendant admits that the facts set out in the [Factual Basis] are true and correct, and specifically stipulates that the weight of the controlled substance(s) at issue is the weight stated in the [Factual Basis]." *Id*. at 6. Petitioner, along with Trial Counsel and the Assistant United States Attorney, duly signed the Plea Agreement and filed it with the Court. *Id*. at 7.

At Petitioner's March 2, 2011, plea hearing, Honorable United States Magistrate Judge Norbert J. Garney engaged in a colloquy with Petitioner and Trial Counsel to determine whether Petitioner voluntarily and knowingly decided to plead guilty to the charge in the Information. *See* Plea Hr'g Tr. 2-16. A Spanish language interpreter assisted Petitioner during this colloquy. *See id*. at 1. At the hearing, Petitioner affirmed to the Court that he had reviewed the Plea Agreement and understood and accepted the terms therein. *See id*. at 7-8. Petitioner further affirmed that the Factual Basis was "true and correct[.]" *See id*. at 14. Judge Garney advised Petitioner that, for pleading guilty to conspiracy to possess 100 kilograms or more of marijuana with intent to distribute, Petitioner faced a sentence between five and forty years in prison. *See id*. at 10. Petitioner affirmed that he understood that he could receive a sentence anywhere within this

2

range. *See id*. at 9. Following this colloquy, Petitioner pleaded guilty to the charge in the

Information, and Judge Garney accepted Petitioner's guilty plea. *See id*. at 15.

A United States Probation Officer prepared a presentence investigation report (the

"PSR"), ECF No. 107, based on the United States Sentencing Guidelines, the Factual Basis, and

other relevant information. The PSR provided that

> in accordance with U.S.S.G. § 1B1.3, Relevant Conduct, Lopez is held
> accountable for a total of 1,413.11 kilograms of marijuana he and his co-
> conspirators jointly conspired to transport into and/or within the United States . . .
> . The U.S. Sentencing Commission guideline for a violation of 21 U.S.C. §§ 846
> and 841(a)(1) is found in U.S.S.G. § 2D1.1(a)(5). For 1,413.11 kilograms of
> marijuana, the Drug Quantity Table establishes a base offense level of 32.

PSR 12.

In accordance with this calculation, the United States Probation Officer calculated that

Petitioner's Guideline Sentence was between 151 and 188 months. *Id*. at 18; *accord* ECF No.

107-1, at 1.

Trial Counsel, on Petitioner's behalf, filed an objection to the PSR, stating that

"Defendant feels he should only be held responsible for 188.75 Kilos," rather than the 1,413.11

kilograms of marijuana described in the Factual Basis. ECF No. 107-4. The Government

responded that the sentence calculated in the PSR was accurate. ECF Nos. 107-5; 108.

This Court held Petitioner's sentencing hearing in the Case on May 18, 2011. A Spanish-

language interpreter assisted Petitioner at this hearing. *See* Sentencing Hr'g Tr. 2, May 18, 2011,

ECF No. 129. At this hearing, Trial Counsel, on Petitioner's behalf, renewed his objection to the

sentence range predicated on the 1,413.11 kilograms of marijuana described in the Factual Basis.

*See id*. at 3, 11-12. The Government reiterated its argument that the 151 to 188 month sentence

range calculated in the PSR was appropriate. *See id*. at 6-9. The Court, based on a preponderance

of the evidence, overruled Petitioner's objection. *Id*. at 13. Specifically, the Court overruled the

objection on the basis of "all of the information, as well as the various eyewitnesses, the recordings, [and] the agents that were involved," as well as its assessment of Petitioner's credibility. *Id*. at 13. The Court then, "based on the information provided, the circumstances of th[e] case, and [Petitioner's] particular circumstances, in keeping with the factors of [18 U.S.C.] § 3553(a)," sentenced Petitioner to 151 months of incarceration. *Id*. at 16-17.

On May 27, 2011, Trial Counsel moved to withdraw as Petitioner's attorney so that the Court could "appoint [Petitioner] an attorney to assist him in the process of appealing his Sentence." ECF No. 120, at 1. The Court granted Trial Counsel's motion on May 31, 2011. On June 6, 2011, the Court appointed another attorney ("Appellate Counsel") to represent Petitioner in his appeal.[2] *See* ECF No. 123; ECF No. 136, at 1.

On appeal, Appellate Counsel filed a motion to withdraw and a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), stating that Petitioner's appeal lacked merit. *See* ECF No. 139, at 3. Petitioner responded to Appellate Counsel's motion and *Anders* brief. *See id*. The Fifth Circuit "concur[ed] with [Appellate Counsel]'s assessment that the appeal presents no nonfrivolous issue for appellate review." *See id*. at 3-4. The Fifth Circuit accordingly excused Appellate Counsel from representing Petitioner and dismissed the appeal. *See id*. at 4.

Petitioner filed the Motion on February 11, 2013. The Motion is Petitioner's first motion pursuant to 28 U.S.C. § 2255 in the Case. The Government filed a response to the Motion (the "Response"), ECF No. 145, on April 23, 2013. Petitioner then filed a reply (the "Reply"), ECF No. 147, on May 10, 2013.

---

[2] This Court initially appointed a different attorney to serve as Petitioner's appellate counsel, but the Fifth Circuit excused this attorney and appointed Appellate Counsel to assume responsibility for the appeal. *See* ECF No. 136, at 1.

## II.     DISCUSSION

### A.     Standard

After a petitioner has been convicted and has exhausted or waived any right to appeal, a court is normally "entitled to presume that the defendant stands fairly and finally convicted." *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001) (citing *United States v. Frady*, 456 U.S. 152, 164 (1982)). Accordingly, "[r]elief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) (quoting *United States v. Segler*, 37 F.3d 1131, 1133 (5th Cir. 1994)). Typically, before a court will grant relief pursuant to § 2255, the petitioner must establish that "(1) his sentence was imposed in violation of the Constitution or laws of the United States, (2) the sentencing court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) the sentence is otherwise subject to collateral attack." *United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995) (citations omitted).

Moreover, a collateral challenge to a conviction or sentence should not serve as a substitute for a direct appeal. *Frady*, 456 U.S. at 165; *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991). When raising issues of jurisdictional or constitutional magnitude for the first time in a motion seeking collateral relief, a petitioner must either: (1) demonstrate "cause" for not raising the issue on direct appeal and "actual prejudice" resulting from the error, or (2) show that he is "actually innocent" of the crime for which he was convicted. *United States v. Torres*, 163 F.3d 909, 911 (5th Cir. 1999). The cause and actual prejudice standard is "significantly more rigorous than even the plain error standard . . . applied on direct appeal." *Gaudet*, 81 F.3d at 589.

5

If the petitioner does not meet either burden, then he is procedurally barred from attacking his conviction or sentence. *United States v. Drobny*, 955 F.2d 990, 994-95 (5th Cir. 1992). This procedural bar does not apply, however, to claims alleging ineffective assistance of counsel. *See Massaro v. United States*, 538 U.S. 500, 508 (2003).

The United States Constitution's Sixth Amendment guarantees an accused the right to the assistance of counsel for his defense in all criminal prosecutions. U.S. Const. amend. VI. Moreover, "the right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). "[I]neffective assistance claims are ordinarily brought for the first time on collateral review because of the difficulty of compiling an adequate record by the time of direct appeal." *Gaudet*, 81 F.3d at 589 n.5. To obtain relief on an ineffective assistance of counsel claim, a petitioner must demonstrate both (1) that his "counsel's performance was deficient[,]" and (2) that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994) (summarizing the *Strickland* standard of review). A failure to establish either prong of this test requires a court to find that counsel's performance was constitutionally effective. *See Strickland*, 466 U.S. at 687 ("Unless a defendant makes both showings, it cannot be said that the conviction or . . . sentence resulted from a breakdown in the adversary process that renders the result unreliable."); *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim."); *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one.").

The test's performance prong centers on whether counsel's assistance was reasonable in light of all the circumstances at the time of counsel's conduct. *See Strickland*, 466 U.S. at 688

6

("The proper measure of attorney performance remains simply reasonableness under prevailing professional norms."). In order to obtain relief, a petitioner must establish "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. In assessing whether a particular counsel's performance was constitutionally deficient, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

A deficiency in counsel's performance, even if professionally unreasonable, does not necessarily equal ineffective assistance of counsel; the petitioner must also demonstrate actual prejudice. *See id.* at 691-92 ("The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution."). The test's prejudice prong requires the petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Because Petitioner appears pro se, the Motion is "entitled to a liberal construction that includes all reasonable inferences which can be drawn from" it. *United States v. Peralta-Ramirez*, Criminal No. H-04-0150-06, Civil Action No. H-07-4582, 2008 WL 4630369, at *2 (S.D. Tex. Oct. 16, 2008) (citing *Haines v. Kerner*, 404 U.S. 519, 521 (1972); *United States v. Pena*, 122 F.3d 3, 4 (5th Cir. 1997)). However, even a pro se litigant must provide sufficient facts in support of his or her claims; "mere conclusory allegations on a critical issue are

7

insufficient to raise a constitutional issue." *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993) (citing *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989)); *accord Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983).

### B.   Analysis

Petitioner challenges his sentence on two grounds. The first is that Trial Counsel and Appellate Counsel (collectively "Counsel") rendered ineffective assistance by failing to adequately challenge the length of Petitioner's sentence. Mot. 10-13; Reply 1-8. The second is that the Case was not conducted in accordance with the Speedy Trial Act, 18 U.S.C. §§ 3161-74, and that Counsel rendered ineffective assistance by failing to challenge Petitioner's sentence on this basis. Mot. 13-14. The Court also construes the Motion to raise an ineffective assistance of counsel claim predicated on Counsel's alleged failure to raise a constitutional – rather than statutory – speedy trial challenge. The Court addresses each challenge in turn.

### 1.   Length of sentence

This Court sentenced Petitioner to 151 months of incarceration. Sentencing Hr'g Tr. 16-17. Petitioner argues that this sentence exceeds the permissible sentence under both the applicable sentencing statute, 21 U.S.C. § 841(b)(1), and the United States Sentencing Guidelines. Mot. 11-13; Reply 1-8. Petitioner therefore argues that Counsel rendered ineffective assistance of counsel by failing to challenge the length of Petitioner's sentence.[3]

---

[3] The Plea Agreement contains a waiver provision establishing that Petitioner "voluntarily and knowingly waives the right to contest the sentence in any post-conviction proceeding, including but not limited to, a proceeding pursuant to 28 U.S.C. § 2255," and that Petitioner "waives all rights to challenge the sentence imposed." Plea Agreement 5-6. *See also United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994) (upholding the informed and voluntary waiver of post-conviction relief). However, because a § 2255 waiver in a plea agreement is not effective "when there is an ineffective assistance of counsel claim that affects the validity of that waiver or the plea itself or when the sentence exceeds the statutory maximum," the Court must consider the merits of Petitioner's claim. *Flores v. United States*, Civil Action No. 4:09cv291, Criminal Action No. 4:05cr71(2), 2012 WL 4092452 (E.D. Tex. July 27, 2012) (citing *United States v. Hollins*, 97 F. App'x 477, 479 (5th Cir. 2004)). In any event, even when a claim may be procedurally barred, a court may nonetheless examine the merits of the claim where, as here, it "can be resolved

As explained below, Petitioner's sentence was proper under both 21 U.S.C. § 841(b)(1) and the Sentencing Guidelines. Consequently, Petitioner cannot show that the result of the criminal proceeding would have been different if counsel had acted differently, so Petitioner cannot satisfy the prejudice prerequisite of his ineffective assistance of counsel claim. *See United States v. Smith*, 915 F.2d 959, 963 (5th Cir. 1990) (quoting *Strickland*, 466 U.S. at 694). The Court accordingly dismisses Petitioner's ineffective assistance of counsel claim to that extent.

### a.    Statutory maximum

Petitioner argues that his sentence exceeded the statutory maximum established by 21 U.S.C. § 841(b)(1). Specifically, Petitioner argues that "he pleaded guilty to one crime, only to be sentenced to another. He pleaded guilty to possession with intent to distribute 100 kilograms of marijuana, 21 U.S.C. § 841(b)(1)(B), but he was sentenced for a 21 U.S.C. § 841(b)(1)(A) violation, a marijuana crime with reference to 1000 kilograms." Reply 1; *see also id.* at 5 ("This is the constitutional error, when sentence [sic] is enhanced above the statutory maximum.").

21 U.S.C. § 841(b)(1)(B)(vii) establishes a five to forty year sentence for possessing "100 kilograms or more of a mixture or substance containing a detectable amount of marijuana" with intent to distribute.[4] By contrast, 21 U.S.C. § 841(b)(1)(A)(vii) imposes a sentence of ten years to life for possessing "1000 kilograms or more of a mixture or substance containing a detectable amount of marijuana" with intent to distribute. Petitioner's sentence of 151 months – or approximately twelve and a half years – falls squarely within the five to forty year statutory range established for possession with intent to distribute of 100 kilograms or more of marijuana.

---

more easily by looking past any procedural default." *Busby v. Dretke*, 359 F.3d 708, 720 (5th Cir. 2004); *Davis v. United States*, Nos. 3:07-CV-1995-P; 3:01-CR-0323-P (03), 2009 WL 3488052, at *3 (N.D. Tex. Oct. 28, 2009) (applying *Busby* rule in context of § 2255 motion).

[4] 21 U.S.C. § 841(b)(1)(A) and (B) impose higher sentences if death or bodily injury results from the crime or if the defendant has prior felony drug convictions.

*See* 21 U.S.C. § 841(b)(1)(B)(vii). Thus, contrary the Petitioner's contention, the Court did in fact issue a sentence in accordance with the reduced crime to which Petitioner pleaded guilty. Therefore, Counsel could not have successfully argued that Petitioner's sentence exceeded the statutory maximum. *See Clark v. Collins*, 19 F.3d 959 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite."). As a result, Counsel's alleged failure to raise the issue did not prejudice Petitioner, and therefore did not amount to ineffective assistance. *See Smith*, 915 F.2d at 963 (quoting *Strickland*, 466 U.S. at 694).

### b.   Sentencing Guidelines

Petitioner argues that because he only took responsibility for 188 kilograms of marijuana, the Court should not have taken the 1,413.11 kilograms of marijuana described in the Factual Basis into account when sentencing Petitioner in accordance with the Sentencing Guidelines. Reply 1-8; Mot. 11-13. In other words, argues Petitioner, because "[t]he government, in an effort to convince [Petitioner] to plead guilty, agreed to DISMISS the in [sic] excess of 1,000 kilogram charges," the Court cannot impose a sentence based on a quantity of marijuana exceeding 1,000 kilograms. Reply 5 (emphasis in original). Petitioner therefore contends that the Court should instead have sentenced Petitioner "to a drug crime with reference to 188 kilograms of marijuana" under the Sentencing Guidelines. *Id*. at 8. Because Counsel failed to raise this issue, argues Petitioner, they rendered ineffective assistance. Mot. 2-7.

The 2010 Sentencing Guidelines[5] provide that a court, when calculating an offender's

---

[5] Although the Court, following the PSR, assesses Petitioner's sentence under the 2010 Sentencing Guidelines which were in effect at the time the Court sentenced Petitioner, the Court would reach the same result if it applied the 2008 Sentencing Guidelines in effect at the time Petitioner committed the offense to which he pleaded guilty because the applicable sections are identical in both versions, albeit with some renumbering. *Compare* U.S.S.G. §§ 1B1.3(a)(1); 2D1.1(a)(5); § 2D1.1(c)(4), (7) (2010), *with* U.S.S.G. §§ 1B1.3(a)(1); 2D1.1(a)(3); § 2D1.1(c)(4), (7) (2008). The Court need not here decide which version of the Guidelines would apply if one version provided for a more severe penalty than the other. *See Peugh v. United States*, --- U.S. ----, 133 S.Ct. 2072, 2078 (2013) (holding that sentencing a defendant "under Guidelines promulgated after he committed his criminal acts" violates the Ex Post

base offense level, should consider as relevant conduct "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction." U.S.S.G. § 1B1.3(a)(1) (2010). In a case involving an alleged conspiracy, the court should also consider "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." *Id.* § 1B1.3(a)(1)(B); *United States v. Brown*, 727 F.3d 329, 341-42 (5th Cir. 2013). For a drug trafficking crime from which no death or bodily injury occurs, the recommended sentence depends on the quantity of drugs involved in the crime. *See* U.S.S.G. § 2D1.1(a)(5), (c) (2010). The base offense level for "[a]t least 1,000 KG but less than 3,000 KG of Marihuana" is 32, whereas the base offense level for "[a]t least 100 KG but less than 400 KG of Marihuana" is 26. *See id.* § 2D1.1(c)(4), (7).

Petitioner's guideline sentence was not excessive because Petitioner did indeed take responsibility for 1,413.11 kilograms of marijuana in the Factual Basis. *See* Plea Agreement 10 ("The parties stipulate that the total amount of marijuana [Petitioner] conspired to posses [sic] with the intent to distribute is no less than 1,413.11 kilograms."); *United States v. Declouet*, 329 F. App'x 535, 535-37 (5th Cir. 2009) (affirming calculation of sentence length based on facts admitted in factual basis).

Petitioner responds that he never admitted to the Factual Basis. According to Petitioner, he "never signed the [F]actual [B]asis, and by all appearances, he NEVER SAW IT!" Mot. 4 (emphasis in original). Petitioner concedes that he

> DID SIGN the [P]lea [A]greement, but the [P]lea [A]greement does not contain a
> single reference to drug quantity being in excess of 1,000 kilograms. [Petitioner]

---

Facto clause of the United States Constitution if "the new version provides a higher applicable Guidelines sentencing range than the version in place at the time of the offense").

> pleaded guilty to the [I]nformation, a charging instrument with reference to 100 kilograms of marijuana. The [P]lea [A]greement contains no terminology different from the terminology contained in the [I]nformation.

*Id*. at 5 (emphasis in original).

Petitioner's assertion that he never admitted to the Factual Basis is incorrect. The Plea Agreement contains a provision that, "[b]y signing the Plea Agreement, [Petitioner] admits that the facts set out in the [Factual Basis] are true and correct, and specifically stipulates that the weight of the controlled substance(s) at issue is the weight stated in the [Factual Basis]." Plea Agreement 6. Petitioner duly signed the Plea Agreement, *see id*. at 7, and affirmed in a colloquy with Judge Garney at which Petitioner was assisted by a Spanish-language interpreter he knowingly and voluntarily signed and agreed to enter the Plea Agreement. Plea Hr'g Tr. 1-16. Moreover, when asked at his plea hearing whether the Factual Basis was "true and correct," Petitioner responded "Yes." *Id*. at 14. Thus, Petitioner took responsibility for the 1,413.11 kilograms of marijuana described in the Factual Basis and consented to be sentenced accordingly.

Petitioner also argues that "the [F]actual [B]asis does not include [Petitioner's] participation in any amount of marijuana in excess of 1,000 kilograms" because the Factual Basis primarily describes drug transactions with which Petitioner was not principally involved. Mot. 5. This argument fails for several reasons. First, Petitioner's direct involvement is irrelevant because the Sentencing Guidelines advise the court to consider, for the purposes of calculating an offender's base offense level, "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1) (2010). *Accord Brown*, 727 F.3d at 341-42. Secondly, notwithstanding Petitioner's assertion to the contrary, the Factual Basis does implicate Petitioner in each of the transactions described therein. *See* Plea

Agreement 7-10 (explaining that Petitioner "was responsible for managing several different stash houses" and describing activities involving over 1,000 kilograms of marijuana at Petitioner's stash houses). Finally, as described above, Petitioner knowingly and voluntarily admitted to a drug offense involving 1,413.11 kilograms of marijuana by signing the Plea Agreement, so he cannot now argue that the Factual Basis inaccurately describes his degree of involvement in the offense. *See id.* at 6, 10; *Declouet*, 329 F. App'x at 535-37.

Petitioner also argues that his sentence violates his Sixth Amendment right to a jury trial as interpreted in *Apprendi v. New Jersey*, 530 U.S. 466 (2000); *Blakely v. Washington*, 542 U.S. 296 (2004); and *United States v. Booker*, 543 U.S. 220 (2005). *See* Mot. 12-13; Reply 2-6. In this line of cases, the Supreme Court considered the circumstances under which a court may impose a sentence exceeding the maximum sentence established by a mandatory sentencing provision or statute on the basis of an aggravating factor. *See Booker*, 543 U.S. at 229 n.1; *Blakely*, 542 U.S. at 298; *Apprendi*, 530 U.S. at 469. The Supreme Court concluded that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Booker*, 543 U.S. at 244. Petitioner therefore argues that "it was incumbent upon the government . . . to prove beyond a reasonable doubt" Petitioner's involvement with over 1,000 kilograms of marijuana. Mot. 6; Reply 2. Petitioner further argues that "[t]o enhance [Petitioner]'s sentence with the 1,000 kilogram amount is a violation of [Petitioner]'s right to a jury trial." Reply 2. Because Counsel did not raise these challenges, argues Petitioner, they rendered ineffective assistance. *Id.*

For the following reasons, the *Apprendi/Blakely/Booker* line of cases is inapposite. First, as explained above, Petitioner's sentence did not exceed "the maximum authorized by the facts

13

established by a plea of guilty" because Petitioner, by stipulating to the Factual Basis, admitted

to an offense under 21 U.S.C. § 841(b)(1)(B)(vii) involving 1,413.11 kilograms of marijuana.

*See Booker*, 543 U.S. at 244. The Court's sentence of 151 months was within the range set by 21

U.S.C. § 841(b)(1)(B)(vii) – namely, five to forty years – so the Court was "entitled to find by a

preponderance of the evidence all facts relevant to the determination of a sentence below the

statutory maximum" without violating the *Apprendi* rule. *United States v. Hernandez*, 633 F.3d

370, 374 (5th Cir. 2011) (citations omitted).

Secondly, *Booker* held that the principle announced in *Apprendi* and its progeny is

inapplicable to the United States Sentencing Guidelines because *Booker* excised the statutory

provision that made the Guidelines mandatory instead of merely advisory. *See* 543 U.S. at 245-

68. As a result,

> *Booker* contemplates that, with the mandatory use of the Guidelines excised, the
> Sixth Amendment will not impede a sentencing judge from finding all facts
> relevant to sentencing [instead of a jury]. The sentencing judge is entitled to find
> by a preponderance of the evidence all the facts relevant to the determination of a
> Guideline sentencing range and all facts relevant to the determination of a non-
> Guidelines sentence.

*United States v. Mares*, 402 F.3d 511, 519 (5th Cir. 2005).

The Court, as it was entitled to do, found by a preponderance of the evidence all facts relevant to

the determination of Petitioner's Guideline sentencing range. *See* Sentencing Hr'g Tr. 13. Based

on the Factual Basis, this Court, at Petitioner's sentencing hearing, found that Petitioner's

offense implicated 1,413.11 kilograms of marijuana, even though he pleaded guilty to an offense

of 100 or more kilograms. *Id*. The Court accordingly imposed a sentence within the range

provided by the Sentencing Guidelines for a crime involving between 1,000 and 3,000 kilograms

of marijuana. *See* U.S.S.G. § 2D1.1(c)(4) (2010). This sentence was also within the statutory

maximum for the offense involving 100 or more kilograms of marijuana. *See* 21 U.S.C. §

14

841(b)(1)(B)(vii). As a result, Petitioner's sentence was proper.

Because, for the reasons described above, no challenge to Petitioner's sentence could succeed, Petitioner cannot demonstrate that he was prejudiced by Trial Counsel's representation at the district court level. *See Peralta-Ramirez*, 2008 WL 4630369, at *7. Moreover, Petitioner cannot prove that Trial Counsel's representation was deficient because Trial Counsel did indeed duly object – albeit without success – to the recommended sentence both in court filings and at Petitioner's sentencing hearing. *See* ECF No. 107-4; Sentencing Hr'g Tr. 3, 10-12. *See also Smith*, 915 F.2d at 963 ("To demonstrate deficiency, the petitioner must show that his counsel's actions 'fell below an objective standard of reasonableness.'" (quoting *Strickland*, 466 U.S. at 688)).

Likewise, Appellate Counsel did not render ineffective assistance by filing an *Anders* brief instead of challenging Petitioner's sentence on appeal. "If the sentencing judge exercises her discretion to impose a sentence within a properly calculated Guideline range," the Fifth Circuit reviews the sentence only for "reasonableness." *Mares*, 402 F.3d at 519. The Fifth Circuit thereby "infer[s] that the judge has considered all the factors for a fair sentence set forth in the Guidelines." *Id*. "Given the deference due the sentencing judge's discretion . . . it will be rare for a reviewing court to say such a sentence is 'unreasonable.'" *Id*. As explained above, this Court correctly imposed a sentence within the Guideline range, so Petitioner is unable to demonstrate that the Fifth Circuit would have ruled in his favor had Appellate Counsel raised the issue on appeal. Thus, Petitioner cannot demonstrate prejudice. *See Smith*, 915 F.2d at 963 (quoting *Strickland*, 466 U.S. at 694).

Thus, the Court dismisses Petitioner's ineffective assistance of counsel claims insofar as they are predicated on the argument that his sentence was excessive.

15

2.       **Speedy Trial Act**

Petitioner also argues that Counsel rendered ineffective assistance by failing to raise a

challenge under the Speedy Trial Act, 18 U.S.C. §§ 3161-74 (the "Act"). *See* Mot. 13-14.

Petitioner argues that, under the Act, the Case should have gone to trial by October 1, 2010, and

Counsel rendered ineffective assistance by failing to raise a challenge on this basis. *See id*.

Petitioner further argues that Counsel never advised him of his rights under the Act. *See id*. at 7.

For the following reasons, the Court concludes that no violation of the Act occurred, so Counsel

did not render ineffective assistance by failing to object to Petitioner's conviction on that ground.

The Act generally provides that

[i]n any case in which a plea of not guilty is entered, the trial of a defendant
charged in an information or indictment with the commission of an offense shall
commence within seventy days from the filing date (and making public) of the
information or indictment, or from the date the defendant has appeared before a
judicial officer of the court in which such charge is pending, whichever date last
occurs.

18 U.S.C. § 3161(c)(1).

However, "the Act contains a detailed scheme under which certain specified periods of delay are

not counted." *Zedner v. United States*, 547 U.S. 489, 492 (2006); *see* 18 U.S.C. § 3161(h). In

pertinent part, the Act excludes "[a]ny period of delay resulting from other proceedings

concerning the defendant;" 18 U.S.C. § 3161(h)(1); "[a] reasonable period of delay when the

defendant is joined for trial with a codefendant as to whom the time for trial has not run and no

motion for severance has been granted;" *id*. § 3161(h)(6); and certain continuances granted in the

interests of justice; *id*. § 3161(h)(7)(A). Additionally, the Fifth Circuit has ruled that "the

excludable delay of one codefendant may be attributed to *all* defendants." *United States v.

Bermea*, 30 F.3d 1539, 1567 (5th Cir. 1994) (emphasis in original, citations omitted). As a result,

the Act excludes "any delay resulting from the proper grant of a continuance requested by a

codefendant." *United States v. Whitfield*, 590 F.3d 325, 358 (5th Cir. 2009) (citing *United States v. Bieganowski*, 313 F.3d 264, 281 (5th Cir. 2002)). "When a period of time is excluded under the [Act], both the date of the triggering event and the ending date are excluded." *United States v. Garza*, No. EP–11–CR–3021–KC, 2012 WL 209055, at *9 (W.D. Tex. Jan. 24, 2012) (citing *United States v. Johnson*, 29 F.3d 940, 943 n.4 (5th Cir. 1994)).

Because the Case was a multidefendant case in which the Court did not grant a motion for severance, the clock under the Act did not begin to run until the initial appearance of the last of Petitioner's co-defendants. *See* 18 U.S.C. § 3161(h)(6); *United States v. Franklin*, 148 F.3d 451, 455 (5th Cir. 1998). Thus, Petitioner's speedy trial clock began to run on August 16, 2010, the date on which Petitioner's co-defendant Luis Azaeta made his initial appearance and the Court unsealed the multidefendant indictment. *See* ECF No. 50.

For the following reasons, the Court further concludes that Petitioner's speedy trial clock stopped and never restarted on September 16, 2010. 18 U.S.C. § 3161(h)(7)(A) provides that the Act excludes

> [a]ny period of delay resulting from a continuance granted by any judge . . at the request of the defendant or his counsel . . . if the judge granted such continuance on the basis of his [or her] findings that the ends of justice served by taking such action outweigh the best of interest of the public and the defendant in a speedy trial.

As noted above, when a court grants a valid continuance under this section to any defendant, that continuance equally tolls the Act as to that defendant's co-defendants. *Whitfield*, 590 F.3d at 358 (citing *Bieganowski*, 313 F.3d at 281); *Bermea*, 30 F.3d at 1567. The Court granted multiple continuances to one or more of Petitioner's co-defendants from September 16, 2010, through October 21, 2010; October 21, 2010, to November 18, 2010; and November 18, 2010, through March 4, 2011; to allow those co-defendants to engage in further investigation, discovery, and

plea negotiations. *See* ECF Nos. 61, 72, 75, 76. As required by 18 U.S.C. § 3161(h)(7)(A), the

Court "set forth . . . in writing . . . its reasons for finding that the ends of justice served by the

granting of such continuance outweigh[ed] the best interests of the public and the defendant in a

speedy trial." *See* 18 U.S.C. § 3161(h)(7)(A); ECF Nos. 61, 72, 75, 76. Thus, these continuances

excluded the period from September 16, 2010, through March 4, 2011, from the seventy day

period under the Act. *See Whitfield*, 590 F.3d at 358 (citing *Bieganowski*, 313 F.3d at 281);

*Bermea*, 30 F.3d at 1567.

      Thus, because Petitioner pleaded guilty on March 2, 2011, *see* ECF No. 99, Petitioner's

speedy trial clock only ran from August 16, 2010, to September 16, 2010. Because this period of

time is far less than seventy days, the seventy-day period established by 18 U.S.C. § 3161(c)(1)

never expired, and no violation of the Act occurred. *See United States v. Green*, 508 F.3d 195,

199 (5th Cir. 2007) (noting that no violation of the Act exists where a defendant pleads guilty

before the seventy-day deadline expires); *Garza*, 2012 WL 209055, at *9-10. Petitioner's

ineffective assistance of counsel claim therefore fails insofar as it is predicated on Counsel's

failure to raise a challenge based on the Act, because he cannot prove that the result of the Case

would have differed if Counsel raised the issue. *See Davis v. United States*, Nos. 3:07-CV-1995-

P; 3:01-CR-0323-P (03), 2009 WL 3488052, at *9 (N.D. Tex. Oct. 28, 2009).

### 3.      Constitutional speedy trial claim

      Petitioner does not explicitly argue that the Case violated his constitutional speedy trial

rights, as opposed to his statutory rights under the Act. *See* Mot. 1-14; Reply 1-8. Nevertheless,

because Petitioner appears pro se, and because Petitioner raises a statutory speedy trial claim, the

Court will liberally construe the Motion to also raise a claim that Counsel prejudiced Petitioner

by failing to raise a constitutional speedy trial challenge. *See Haines*, 404 U.S. at 521. For the

following reasons, the Court concludes that Petitioner had no meritorious constitutional speedy

trial claim, so Counsel did not render ineffective assistance by failing to raise one.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant

the right to a speedy trial. *See generally Barker v. Wingo*, 407 U.S. 514, 515 (1972). In

determining whether this right has been violated in any given case, courts engage in "a balancing

test[] in which the conduct of both the prosecution and the defendant are weighed." *Id*. at 530.

Although there is no exhaustive list of factors to consider, and no single factor is alone

dispositive, courts generally consider (1) the length of the delay; (2) the reason for the delay; (3)

the defendant's assertion of his or her right; and (4) the extent to which the challenged delay

prejudiced the defendant. *Id*. at 530-33.

### a.      Length of delay

A grand jury indicted Petitioner on July 14, 2010, and Petitioner pleaded guilty on March

2, 2011. *See* Indictment; Plea Hr'g Tr. A defendant generally cannot establish a constitutional

violation where, as here, less than a year elapses between the accusation and the verdict. *See*

*Goodrum v. Quarterman*, 547 F.3d 249, 257-58 (5th Cir. 2008) (citing *Doggett v. United States*,

505 U.S. 647, 651-62 (1992); *Barker*, 407 U.S. at 530-31; *United States v. Serna-Villarreal*, 352

F.3d 225, 230 (5th Cir. 2003)). This is especially true where, as here, Petitioner was charged in a

multidefendant conspiracy offense, which is relatively more complex than other types of crimes.

*See Barker*, 407 U.S. at 531 ("[T]he delay that can be tolerated for an ordinary street crime is

considerably less than for a serious, complex conspiracy charge."). Thus, the length of delay here

does not suggest a constitutional violation.

Because a delay of less than a year does "not rise to the level of presumptive prejudice,"

the Court "need not consider" the remaining factors enumerated in *Barker*. *See United States v.*

*Metz*, 608 F.2d 147, 152 (5th Cir. 1979) (citing *Barker*, 407 U.S. at 530; *United States v. Edwards*, 577 F.2d 883, 888 (5th Cir. 1978), *cert. denied*, 439 U.S. 968 (1978)). In an abundance of caution, however, the Court nonetheless examines the remaining *Barker* factors below and concludes that none of them support a constitutional speedy trial challenge.

### b.      Reason for delay

> The weight assigned to a state's reasons for post-accusation delay depends on the reasons proffered. At one extreme, a deliberate delay to disadvantage the defense is weighted heavily against the state. At the other end of the spectrum, delays explained by valid reasons or attributable to the conduct of the defendant weigh in favor of the state. Between these extremes fall unexplained or negligent delays, which weigh against the state, "but not heavily."

*Goodrum*, 547 F.3d at 258 (citations omitted).

As described above, the bulk of the delays in the Case occurred due to continuances granted by the Court to allow Petitioner's co-defendants to engage in further investigation, discovery, and plea negotiations. *See* ECF Nos. 61, 72, 75, 76. This is a valid reason that weighs against finding a constitutional violation. *See United States v. Parker*, 505 F.3d 323, 329 (5th Cir. 2007). Moreover, the remaining delays occurred because Petitioner himself requested a continuance to allow him more time to decide whether to plead guilty. *See* ECF No. 68. Because the reasons for the delay were attributable to Petitioner and his co-defendants rather than to the prosecution, this factor suggests no constitutional violation occurred. *See Goodrum*, 547 F.3d at 258 (citing *Cowart v. Hargett*, 16 F.3d 642, 647 (5th Cir. 1994)).

### c.      Petitioner's assertion of his speedy trial right

The record does not reflect that Petitioner asserted his constitutional right to a speedy trial. *See* Mot. 14; *Barker*, 407 U.S. at 531-32. To the contrary, Petitioner requested and received a continuance further delaying the trial. *See* ECF No. 68. Nor does the record indicate that Petitioner objected to the continuances requested by his co-defendants. *See Metz*, 608 F.2d at 152

(citing *Barker*, 407 U.S. at 531-32). Petitioner does suggest that, although he failed to assert his speedy trial right, he would have raised a speedy trial challenge if Counsel had properly advised him of his constitutional rights. *See* Mot. 14. However, because Petitioner makes no showing as to any of the other *Barker* factors, the mere possibility that Petitioner would have raised a constitutional challenge had he been fully informed is not sufficient to establish a violation of his right to a speedy trial. *See Barker*, 407 U.S. at 533 ("We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial."). *See also Metz*, 608 F.2d at 152 (citing *Barker*, 407 U.S. at 530; *Edwards*, 577 F.2d at 888) (holding that whether the defendant asserted his speedy trial right is of reduced importance where the length of delay is less than one year).

### d.    Prejudice and other factors

Finally, Petitioner does not explain how he was prejudiced by the delay. *See* Mot. 13-14; *Barker*, 407 U.S. at 532. Nor has Petitioner identified any other factors that would indicate a constitutional violation occurred. *See* Mot. 13-14; *Barker*, 407 U.S. at 530 (noting that the list of factors enumerated in *Barker* is nonexhaustive). As a result, Petitioner has failed to demonstrate a violation of his constitutional right to a speedy trial. Consequently, Petitioner cannot prove that Counsel rendered ineffective assistance by failing to raise a constitutional speedy trial challenge, so the Court dismisses Petitioner's claim. *See Smith*, 915 F.2d at 963 (quoting *Strickland*, 466 U.S. at 694).

### C.    Evidentiary Hearing

28 U.S.C. § 2255(b) provides that

[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine

the issues and make findings of fact and conclusions of law with respect thereto. For the reasons discussed above, the Motion, the Reply, and the files and records of the Case amply demonstrate that Petitioner is entitled to no relief, so no evidentiary hearing is necessary to rule on the Motion. *See Davis*, 2009 WL 3488052, at *9; *Peralta-Ramirez*, 2008 WL 4630369, at *11.

### D.   Certificate of Appealability

Pursuant to 28 U.S.C. § 2253, Petitioner must obtain a certificate of appealability before appealing this Order. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir. 1997). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requires the petitioner to demonstrate "that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336. "A district court may deny a certificate of appealability, sua sponte, without requiring further briefing or argument." *Peralta-Ramirez*, 2008 WL 4630369, at *12 (citing *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000)).

For the reasons described above, "jurists of reason would not debate whether [Petitioner] has stated a valid claim." *See id*. As a result, the Court sua sponte denies Petitioner a certificate of appealability. *See id*.

## III.   CONCLUSION

It is therefore **ORDERED** that the Motion, ECF No. 140, EP-10-CR-1937-KC-1, is **DENIED**.

**IT IS FURTHER ORDERED** that the corresponding civil action, EP-13-CV-35, is

**DISMISSED WITH PREJUDICE**. The clerk shall close the case.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**SO ORDERED**.

**SIGNED this 20th day of December, 2013.**


KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE